# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 16, 2012

No. 11-31186
Summary Calendar

Lyle W. Cayce
Clerk

MARLIN DALE PLAYER,

Plaintiff–Appellant,

v.

KANSAS CITY SOUTHERN RAILWAY COMPANY,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:06-CV-1980

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Marlin Player was dismissed from his job with the Kansas City Southern Railway after an investigation concluded he was partially responsible for an incident in the rail yard that damaged some equipment, his sixth rule violation in a three-year period. Player sued, claiming he lost his job due to racial discrimination, but his case was dismissed on summary judgment. We conclude

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31186

that Player has not met his burden of showing discrimination and therefore affirm.

# I

Marlin Player worked in the Shreveport rail yard for the Kansas City Southern Railway Company (KCSR). He served as a switchman, brakeman, and conductor, and on some crews he also served as the foreman, conducting job briefings and ensuring the crew members performed their jobs safely. He was dismissed from his position after an incident on May 28, 2005, that amounted to a violation of KCSR's General Code of Operating Rules.

Prior to his dismissal, Player had accrued five other rule violations in the rolling three-year period considered by the railroad in deciding discipline and dismissal. These violations included: (1) a derailment in the yard, a major violation leading to a five-day suspension; (2) a sideswipe, leading to a reprimand; (3) riding on moving equipment as conductor, a major violation leading to a five-day actual and a twenty-five-day record suspension; (4) a bypassed coupler incident, leading to a five-day actual and forty-day record suspension; and (5) marking off under false pretenses, leading to a forty-five day actual suspension.

After an investigation of the May 28, 2005, incident, KCSR concluded that Player, as foreman, supervised a crew that caused a "bypassed coupler," which damaged the equipment, despite the crew having been warned about safe coupling practices earlier that day. Player was dismissed from service at the conclusion of the investigation, but he appealed the decision. On appeal, the Public Law Board concluded that although Player was "guilty, as charged" and KCSR had met its burden of proof to administer "a severe disciplinary penalty," the penalty of dismissal was nonetheless "harsh and unreasonable." The Board converted Player's termination into a suspension without pay for the time he had been out of service and ordered him reinstated.

2

No. 11-31186

Player also pursued a racial discrimination claim with the Equal Employment Opportunity Commission, which dismissed his claim and issued a right-to-sue letter. Player then filed this lawsuit. After discovery, KCSR moved for and was granted summary judgment. The district court made alternative holdings that Player had failed to state a prima facie case because his proposed comparators were not similarly situated to him and that Player had failed to establish that KCSR's reasons for dismissal were pretextual. Player appeals.

## II

We review a grant of summary judgment de novo, applying the same standard as the district court.[1] "Summary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[2] Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[3]

Player argues he suffered discrimination in violation of Title VII of the Civil Rights Act[4] and 42 U.S.C. § 1981. Claims under these two statutes are governed by the same analysis.[5] When a claim of discrimination is based on circumstantial evidence as it is here, we assess the claim using the framework

---

[1] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004).

[2] *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010) (quoting FED. R. CIV. P. 56(a)).

[3] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal quotation marks omitted).

[4] 42 U.S.C. § 2000e-2.

[5] *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

No. 11-31186

of *McDonnell Douglas Corp. v. Green.*[6]  Under *McDonnell Douglas*, Player must establish a prima facie case of discrimination, at which point the burden shifts to KCSR to provide a legitimate, nondiscriminatory reason for its actions.[7]  If it does so, Player then bears the burden of demonstrating that KCSR's proffered reason was actually a pretext for racial discrimination.[8]

To meet his burden to establish a prima facie case, Player must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[9]  KCSR disputes only the fourth element.

To satisfy the fourth element, the employment actions taken with respect to the plaintiff and his comparators must occur "under nearly identical circumstances."[10]  That requirement is satisfied if "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[11]  "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to

---

[6] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

[8] *Id.* at 804-05.

[9] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)).

[10] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

[11] *Id.* at 260 (footnotes omitted).

No. 11-31186

that of the proffered comparator who allegedly drew dissimilar employment decisions."[12]

Player argues the district court incorrectly found that the circumstances of his dismissal were not comparable to the circumstances of two proposed comparators. Player claims he was treated less favorably than Greg Bickham and Steve Sandlin, two locomotive engineers who Player says had actual responsibilities similar to his and committed violations of comparable seriousness to his.

Player asserts that the district court looked only at job titles in deciding that his comparators were insufficiently similar to him. He counters that "the day-to-day reality of the positions makes them nearly identical" and that he could be called upon to perform the duties of an engineer. However, Player cites no record evidence that suggests he and his comparators "held the same job or responsibilities."

Player further argues that he and his comparators had their job status ultimately determined by the same person, Kathy Alexander. Although Player asserts that Alexander was responsible for administering KCSR's discipline policy, Player has not presented any evidence that Alexander was involved in his termination or that she declined to reinstate him.

Player has likewise not shown his disciplinary history is similar to his comparators'. To be "essentially comparable," the disciplinary histories "need not comprise the identical number of identical infractions" but must be comparable, with similarity turning on the "comparable seriousness" of the incidents for which the individuals were disciplined.[13]

---

[12] *Id.*

[13] *Id.* at 261 (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).

No. 11-31186

Player quotes this court's decision in *Lee* to provide Bickham's disciplinary history, naming three specific incidents: failing to inspect a train (thirty-day suspension), improper handling of a train resulting in its separation (five-day suspension), and occupying a main track without permission, which resulted in his termination; Bickham was later reinstated by Alexander.[14] Player also notes four moving violations by Sandlin, who received discipline for three incidents of failing to inspect a train (suspensions of forty-five days, five days actual and sixty days record, and thirty days) and a side collision, which led to his dismissal. At some point, Sandlin was also reinstated, though Player does not cite any part of the record to establish the circumstances of his reinstatement.

Prior to the violations that led to their dismissals, Bickham had accrued two violations and Sandlin had accrued three. Despite Player's assertion that his history was similar to these comparators, he does not explain how their records were comparable to Player's five prior violations. Additionally, Player has offered no evidence to indicate that the violation that led to his dismissal was of comparable seriousness to the final violation for either Bickham or Sandlin.

Player has failed to establish a prima facie case. We base our decision not on the individuals' different job titles but rather on the record evidence indicating that they did not perform the same functions, have the same responsibilities, or have comparable disciplinary histories. "[E]mployees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated."[15] Compared to both Bickham and Sandlin, Player has not shown that he had similar work responsibilities or that he was terminated for similar violations. Player

---

[14] *Id.*

[15] *Id.* at 259-60 (citing *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990)).

No. 11-31186

therefore has not demonstrated that he was similarly situated to either proposed comparator.

Because Player has not met the fourth element of his prima facie case, he cannot establish discrimination. We therefore need not address the other steps of the *McDonnell Douglas* analysis to conclude that the district court properly granted summary judgment.

*        *        *

The judgment of the district court is AFFIRMED.